**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOSEPHINE GRIMM and )
LESTER GRIMM, )
             Plaintiffs, )
              )     Civil Action No.08-788
      v. )     Judge Nora Barry Fischer
              )
CITIBANK (SOUTH DAKOTA), N.A, )
            Defendant. )

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiffs Josephine Grimm and Lester Grimm (hereinafter "Plaintiffs") filed the instant civil action against Defendant Citibank (South Dakota), N.A., (hereinafter "Citibank") alleging eight (8) causes of action arising out of alleged fraudulent activity associated with credit card accounts Plaintiffs held with Citibank. Plaintiffs allege: (1) breach of implied contract; (2) negligence; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) breach of fiduciary duty; (6) violations of the Pennsylvania Unfair Trade Practices/Consumer Protection Law, 73 P.S. § 201, *et seq.* ("UTP/CPL"); (7) violation of the Truth in Lending Act, 15 U.S.C. § 1700, *et seq.* ("TILA") and the Consumer Credit Protection Act 15 U.S.C. § 1643 ("CCPA"); and (8) negligence *per se.* (Docket No. 1, Exhibit A). Pending before the Court is Citibank's Motion to Dismiss Plaintiffs' Amended Complaint [3]. For the reasons stated below, the Court **GRANTS** said motion, with prejudice, with respect to Counts I, II, III, IV, V, VII and VIII of Plaintiffs' Amended Complaint. In addition, the Court **GRANTS** Citibank's Motion to Dismiss, without prejudice, with respect to

Couth VI of Plaintiffs' Amended Complaint.

## II.  PROCEDURAL HISTORY

Plaintiffs filed their Amended Complaint on May 16, 2008 in the Court of Common Pleas of Westmoreland County, Pennsylvania.[1]  (Docket No. 1, Exhibit A).  On June 9, 2008, Citibank timely removed the action to federal court based on this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, in that Plaintiffs' claims assert violations of TILA and the CCPA, (Docket No. 1).  The case was then assigned to Judge William Standish of the United States District Court for the Western District of Pennsylvania.  Thereafter, on July 7, 2008, Citibank filed a Motion to Dismiss Plaintiffs' Amended Complaint.  (Docket No. 3).  In response, on July 30, 2008, Plaintiffs filed a Response to Citibank's Motion to Dismiss Plaintiffs' Amended Complaint.  (Docket No. 11).  On August 5, 2008, this case was reassigned to Judge Nora Barry Fischer.  (Docket No. 13). Subsequently, on August 19, 2008, Plaintiffs filed a Supplement to their Response to Citibank's Motion to Dismiss.  (Docket No. 18).  The Court conducted a Case Management Conference and heard argument on any pending motions on September 4, 2008. (Docket No. 22).  During said conference, Plaintiffs requested leave to file a supplemental brief in regard to the pending motion, which the Court granted.  (Docket No. 24).  Thereafter, on September 15, 2008, Plaintiffs filed a Second Supplement to their Response to Citibank's Motion to Dismiss.  ( Docket No. 28).  Finally, on October 6, 2008, Plaintiffs and Citibank each filed a final supplement to their respective briefs,

---

[1]

Prior to this, Plaintiffs filed a Complaint in the Court of Common Pleas of Westmoreland County on July 30, 2007, naming 16 defendants, including each of the Defendants herein.  *Lester Grimm, et. al. v. Advanta Bank Corp., et. al.*, Westmoreland County, No. 07-CI-05923.  The state court dismissed the Original Complaint while granting Plaintiffs leave to amend.  (Civil Action No. 08-788, Docket No. 1).

addressing choice of law issues.  ( Docket Nos. 32 and 33).  The motion is now ripe for disposition.

## III.    FACTUAL BACKGROUND

### *Statement of Facts*

Between October of 2005 and September of 2006, Plaintiffs allege that they held "at least"

three (3) credit card accounts with Citibank.[2]  (Docket No. 1, Exhibit A at ¶5).[3]  During this time

period, Plaintiffs contend that, "upon information and belief," there were fraudulent charges made

to their credit cards.  (*Id.* at ¶6).  During the oral argument heard by this Court, Plaintiffs' counsel

informed the Court that the fraudulent transactions associated with Plaintiffs' Citibank credit cards

amounted to approximately $250.  (Transcript of Oral Argument ("Arg't. Trans.") dated September

4, 2008 at 11: 21).

Plaintiffs allege that they were physically disabled while the fraudulent activity associated

with their credit card accounts occurred and thus, were unable to detect the fraudulent charges until

August of 2006.[4]  (Docket No. 1, at ¶¶7-8).  According to letters from their treating physicians

attached to the Amended Complaint, Mr. Grimm suffers from severe cardiac problems, including

---

[2]

As the Court reads the Amended Complaint and the parties' briefs, the exact number of credit card accounts Plaintiffs hold with Citibank is never disclosed.  However, the parties agree that the accounts are governed by the three card agreements that have been attached as Exhibits 5-7. (*See* Docket No. 1, Exh. 5-7; Docket No. 1, Exhibit A at ¶14; Docket No. 4 at 2).

[3]

Hereinafter, the Court will cite Plaintiffs' Amended Complaint as "Docket No. 1."

[4]

Plaintiffs concede that they do not have possession of the monthly credit card statements corresponding to the time period relevant to the instant case.  However, Plaintiffs contend that the fraudulent activity can be evidenced by the relevant statements in the possession of Defendant. (Docket No. 1 at ¶6).

the sequelae of three cerebral vascular accidents ("CVA"),[5] while Mrs. Grimm suffers from fourth stage Lyme disease,[6] depression, and neurological problems. (*Id.* at Exhibits 1-3).

After detecting the fraudulent activity, Plaintiffs notified Citibank and the Secret Service of the fraudulent charges. (*Id.* at ¶¶8-9). A special agent with the Secret Service conducted an investigation into the fraudulent activity associated with Plaintiffs' credit card accounts. In a letter addressed to Plaintiffs' counsel dated December 11, 2006, the Secret Service agent stated that the Plaintiffs were defrauded by unknown individuals in an amount in excess of $600,000.00. (*See id.*, Exhibit 4). The agent further stated that it appeared that Plaintiffs were defrauded through the use of hidden computer software known as "spyware" embedded within RiverBelleCasino.com,[7] a subsidiary of Belle Rock Entertainment, an online gambling website which Mrs. Grimm frequented.[8]

---

[5]

A CVA is an apoplectic stroke, a hemorrage into the brain or blockage of a blood vessel in the brain. 1 J.E. Schmidt, M.D., ATTORNEYS' DICTIONARY OF MEDICINE C-164 (2007).

[6]

Lyme disease is "a recurrent, multisystemic disorder caused by the sprochete *Borrelia burgdoferi*; vectors for human infection are the ticks ... It begins in most cases with erythema chronicum migran (at least 5 cm in diameter), which is followed by myalgia, arthritis of large joints, stiff neck, nervous system problems, cardiovascular problems, and other systemic symptoms, such as chills, fever, headache, malaise, and vomiting." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 545 (31st ed. 2007).

[7]

River Belle Online Casino which was launched in 1997, is a member of the Interactive Gaming Council (IGC), and is licensed to conduct business by the Government of Gibralter. The site touts that "[y]ou can play for fun, or play for real money by downloading the Online casino software." River Belle Online Casino offers over 200 interactive games. *See* http://www.riverbelle.com/portal/about-us.asp?VT=524285658&EventId=27227 (last visited on October 24, 2008).

[8]

According to the Federal Trade Commission's consumer protection website, spyware is computer software installed on one's computer without his consent in order to monitor or control

(*Id*.).  In fact, during the course of the Secret Service's investigation, Mrs. Grimm claimed that she voluntarily submitted personal information to RiverBelleCasino.com in order to download online gambling software.  (*Id*.).  Subsequently, numerous individual credit cards were obtained by unidentified third parties in Mrs. Grimm's name, and these credit cards accumulated large amounts of unauthorized charges.  (*Id*.).  Plaintiffs allege that Citibank was obligated to provide fraud protection on their Citibank credit card and failed to satisfy this obligation by overlooking the fraudulent activity and refusing to compensate Plaintiffs for the fraudulent charges.  (*Id.* at ¶¶11-12).

### The Citibank Agreements[9]

Plaintiffs have attached to their Amended Complaint the credit card agreements which they claim govern their accounts with Citibank.  (*See id.*, Exhibit 5-7).  Plaintiffs claim that, upon opening the Citibank credit cards, they "entered into a contract with Citibank."  (*Id.* at ¶14).  Furthermore, Plaintiffs claim that they "put their full faith and trust in Citibank to act in compliance with the terms and conditions of the [c]ontract."  (*Id.* at ¶16).  The contractual language pertinent to the instant dispute is detailed below.

Under the bold-faced heading "Your Account" on page two (2), the agreement states:

> [y]ou agree to use your account in accordance with this Agreement.  This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or

---

computer use.  Spyware may be used to "send pop-up ads, redirect one's computer to certain websites, monitor internet surfing, or record keystrokes, which could lead to identity theft." *See* http://www.ftc.gov/bcp/edu/pubs/consumer/alters/alt142.pdf (last visited on October 24, 2008).

[9]

While language from only one of the agreements submitted by Plaintiffs will be referenced in this section, the Court notes that the additional agreements submitted by Plaintiffs contain similar, and in some instances identical, language.  (Docket No. 1, Exhibits 5-7).

authorized use of the card.

(Docket No. 1, Exhibit 5 at 2).

Under the bold-faced heading "Refusal of the Card" on page nine (9), the agreement states:

> [w]e do not guarantee approval of transactions and are not liable for transactions that are not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges until we can verify the activity.

(*Id.* at 5).

Under the heading "Lost or Stolen Cards, Account Numbers, or Convenience and Balance Transfer Checks," on pages five (5) and six (6), the agreement states:

> [i]f any card, account number or check is lost or stolen or if you think someone used or may use them without permission, call us at the Customer Service number on the billing statement or the number obtained by calling toll-free or local Directory Assistance. We may require you to provide certain information in writing and help us find out what happened and to comply with our investigation. You must identify for us the charges that were not made by you, or someone authorized by you, and from which you received no benefit.

(*Id.* at 5-6).

Finally, the agreement sets forth cardholder's rights and Citibank's responsibilities under the Fair Credit Billing Act ("FCBA"). As to the cardholder, the agreement states:

> [i]f you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) as soon as possible at the address provided in the Billing Rights Summary portion on the back of your statement. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

(*Id.* at 8).  As to Citibank, the agreement states:

> [w]e must acknowledge your letter within 30 days, unless we have corrected the error by then.  Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent...You do not have to pay any questioned amount, but you are still obligated to pay the parts of your bill that are not in question.

(*Id.* at 8).

## IV.    STANDARD OF REVIEW

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6)  if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Ehrheart v. Verizon Wireless*, Civil Action No. 07-1165, 2008 U.S. Dist. LEXIS 73416, at *3 n. 1 (W.D. Pa. Sept. 25, 2008)(citing *Bell Atlantic Corp. v. Twombly*, – U.S.–, 127 S.Ct. 1955 (2007)).  A claim for relief under Federal Rule of Civil Procedure 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 127 S.Ct. at 1965. A plaintiff must aver sufficient factual allegations in order "to raise a right to relief above the speculative level."  *Ayers v. Osram Slyvania, Inc.*, Civil Action No. 07-1780, 2008 U.S. Dist. LEXIS 72644, at *6 (M.D. Pa. Sept. 24, 2008) (citing *Twombly*, 127 S.Ct. at 1965).  In considering a Rule 12(b)(6) motion, a court must view all of the plaintiff's allegations as true and construe all inferences in the light most favorable to the non-moving party.  *Umland v. Planco Fin. Servs.*, Civil Action No. 06-4688, 2008 U.S. App. LEXIS 19225, at *10 (3d Cir. Sept. 9, 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).  However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  *See*

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 215 (3d Cir.2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir.1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). Generally, this does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while "rais[ing] a reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, Civ. A. No. 08-411, 2008 U.S. Dist. LEXIS 57988, at * 7 (W.D. Pa. July 30, 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 127 S.Ct. at 1964-65).

## V. CHOICE OF LAW

Each credit card agreement involving Plaintiffs and Citibank contains a choice of law provision. The agreements state that: "[t]he terms and enforcement of this Agreement shall be governed by federal law, and the law of South Dakota, where we are located." (Docket No. 1, Exhibit 5 at 8; Exhibit 6 at 3; Exhibit 7 at 6).

A federal court sitting in diversity must apply the choice of law rules of the forum state. *Knuzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Klaxon v. Stentor Electric*, 313 U.S. 487, 497 (1941)). Accordingly, the Court will apply Pennsylvania choice of law rules.

With respect to breach of contract cases, Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws, which generally honors the intent of the contracting parties and enforces choice of law provisions in contracts executed by them. *Kruzits*, 40 F.3d at 55 (citing *Smith v. Commonwealth National Bank*, 557 A.2d 775, 777 (Pa. Super. 1989) *appeal denied*,

569 A.2d 1369 (Pa. 1990)).[10]  However, the extent to which, and to what types of claims, Pennsylvania courts will apply a choice of law provision in a contract is determined by a number of factors.

One such factor is the breadth of the contractual choice of law provision.  Pennsylvania courts analyze choice of law provisions to "determine, based on their narrowness or breadth, whether the parties intended to encompass all elements of their association." *Comosiflex, Inc. v. Advanced Cardiovascular Systems, Inc.*, 795 F. Supp. 151, 157 (W.D. Pa. 1992).  Narrow choice of law provisions stating that a contract's terms or enforcement are to be governed, or  construed, by the laws of another state are generally interpreted by Pennsylvania courts to relate only to the construction and interpretation of the contract at issue.  *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa, Inc.*, 848 F. Supp. 569 (E.D.Pa. 1994).  For example, in *Jiffy Lube*, the court held that "[c]ontractual

---

[10]

Section 187 provides:
(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2) the law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by explicit provision in their agreement directed to that issue, unless either:
    (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
    (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Restatement (2d) of Conflict of Law § 187 (1971).

choice of law provisions ... do not govern tort claims between the contracting parties unless the fair import of the provision embraces all aspects of the legal relationship." *Id.* at 576. Similarly, in *Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*, 94 F.Supp. 2d 589 (E.D. Pa. 1999), the court held that a choice of law provision that stated "[t]his agreement shall be governed by the state of Delaware" applied only to claims relating to parties' rights and duties under the contract itself. *Id.* at 594. The court found that had the parties wanted the choice of law provision to apply to other matters, they could have inserted language that Delaware law governed "all matters, including, but not limited to, matters of *validity*, construction, effect or performance." *Id.* (emphasis in original). Specifically, with respect to tort claims, courts within this circuit have held that "narrow choice of law provisions are generally held insufficient to encompass the contracting parties' tort claims." *Wright v. McDonald's Corp.*, Civil Action No. 91-2061, 1993 WL 53582, at *7 n.6 (E.D. Pa. 1993).

Based on the above cited principles, the Court finds that the agreements between Plaintiffs and Citibank are narrowly drawn because they are similar in both form and substance to the agreements in *Comisoflex* and *Jiffy Lube* cited above. The language in each provision speaks only to the enforcement of each of the agreements themselves, and not to all matters relating to the parties. (Docket No. 1, Exhibit 5 at 8; Exhibit 6 at 3; Exhibit 7 at 6). Moreover, the agreements are silent as to whether their choice of law provisions shall apply to tort claims. (*Id.*) Therefore, it cannot be said that "the fair import of the provision embraces all aspects of the legal relationship" between Plaintiffs and Citibank. *Jiffy Lube*, 848 F. Supp. at 576. Accordingly, the Court upholds each choice of law provision with respect to Plaintiffs' breach of implied contract claim, but declines to enlarge the scope of these provisions to hold that they apply to Plaintiffs' remaining claims.

When a choice of law provision in a contract does not apply to particular claims, as is the case here, the claims not covered by the provision must be analyzed under the factors set forth by the United States Court of Appeals for the Third Circuit in *Hammersmith v. TIG Insur. Co.*, 480 F.3d 220 (3d Cir. 2007). In the first part of this analysis, a court must determine if there is an actual or real difference between potentially applicable laws. *Hammersmith*, 480 F.3d at 230 (citing *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 272 F.Supp. 2d 482, 490 n.9 (E.D.Pa. 2003) (explaining that courts must determine whether states would actually treat an issue any differently)). If no difference between the applicable laws of each state exists, a choice of law analysis is unnecessary. *Id*. After a review of the relevant laws of Pennsylvania and South Dakota and for the reasons that follow, the Court finds that South Dakota courts would not treat Plaintiffs' remaining claims differently than courts in Pennsylvania.

With respect to Plaintiffs' claims for negligence, both Pennsylvania and South Dakota law require that a plaintiff allege: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the defendant's breach was a proximate cause of an injury to the plaintiff; and (4) the plaintiff suffered actual loss or damages. *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998); *Fisher Sand & Gravel Co. v. South Dakota Dept. of Transportation*, 558 N.W.2d 864, 867 (S.D. 1997).

Regarding a claim for fraudulent misrepresentation, Pennsylvania and South Dakota law requires a plaintiff to allege: (1) a false representation by the defendant which is material to the transaction; (2) knowledge of the representation's falsity or reckless indifference to its truthfulness; (3) an intent to mislead the plaintiff into relying upon it; (4) the plaintiff's action or inaction taken

in justifiable reliance upon the representation; and (5) an injury proximately caused by the plaintiff's reliance. *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994); *North American Truck & Trailer, Inc. v. M.C.I. Communication Services*, 751 N.W.2d 710, 713 (S.D. 2008) (citing *Northwest Realty Co. v. Colling*, 147 N.W.2d (S.D. 1966).

A plaintiff alleging negligent misrepresentation must allege, pursuant to both Pennsylvania or South Dakota law: (1) a representation by the defendant which is material to the transaction; (2) made under circumstances in which the defendant ought to have known its falsity; (3) with the intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) an injury caused by the plaintiffs' reliance. *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 277(Pa. 2005) (citing *Gibbs*, 647 A.2d at 890); *Fisher v. Kahler*, 641 N.W.2d 122, 126-127 (S.D. 2002).

With respect to a breach of fiduciary duty claim, plaintiffs in both Pennsylvania and South Dakota are required to allege: (1) the existence of a fiduciary relationship; (2) the defendant's failure to act in good faith and solely for the benefit of the plaintiff with respect to matters within the scope of the fiduciary relationship; and (3) an injury to the plaintiff proximately caused by the defendant's failure to act. *Baker v. Family Credit Counseling Corp.*, 440 F.Supp.2d 392, 414-415 (E.D. Pa. 2006) (citing Pa. S.S.J.I. § 4.16) ; *see also McDermott v. Party City Corp.*, 11 F.Supp. 2d 612, 626 n.18 (E.D.Pa. 1998)(applying Pennsylvania law)); *Chem-Age Industries, Inc. v. Glover*, 652 N.W.2d 756, 772 (S.D. 2002) (citing *Grand State Property, Inc. v. Woods, Fuller, Shultz, & Smith, P.C.*, 556 N.W.2d 84, 88 (S.D. 1996).

Finally, when claiming negligence *per se* pursuant to either Pennsylvania or South Dakota

law, a plaintiff must allege: (1) the defendant's violation of a statute; (2) the statute's purpose applies to the plaintiff, at least to the extent of protecting the interests of a specific class of people, to which plaintiff belongs; (3) the statute applies to the conduct of the defendant; and (4) injuries proximately caused by the defendant's violation of the statute. *Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1059 (Pa. Super. 2003) (citing *Wagner v. Anzon*, 684 A.2d 570, 574 (Pa. Super. 1996)); *Baatz v. Arrow Bar*, 426 N.W.2d 298, 300 (S.D. 1988).

Based on the foregoing, the Court finds no appreciable difference between the laws of Pennsylvania and South Dakota with respect to Plaintiffs' claims not based in contract. Due to the Court's situs and the lack of difference between each states' laws, the Court will apply Pennsylvania law to Plaintiffs' remaining tort claims.

## VI.    ANALYSIS

As detailed above, Plaintiffs have brought eight claims against Discover and Bank of America, which include:  (1) breach of implied contract; (2) negligence; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) breach of fiduciary duty; (6) violations of the UTP/CPL; (7) violations of TILA, 15 U.S.C. § 1700, *et seq.*, and the CCPA, 15 U.S.C. § 1643; and (8) negligence *per se.*  Citibank has moved to dismiss all eight claims.

### *Breach of Implied Contract*

As explained in Section V, the Court will address Plaintiffs' breach of implied contract claims pursuant to South Dakota law. Plaintiffs allege that when they opened credit cards with Citibank, they entered into  contracts. (Docket No. 1 at ¶ 14).  According to Plaintiffs, said contracts included an implied term that Defendants would provide fraud protection; hence,

Defendants allegedly breached said implied contract by failing to protect the Plaintiffs when the fraudulent charges occurred. (Docket No. 1 at ¶¶15-17). Citibank contends that Plaintiffs' breach of implied contract claim warrants dismissal because an express contract exists between the parties which governs the subject matter of the dispute, and would negate Plaintiffs' ability to bring a claim under an implied contract theory. (Docket No. 4 at 5). Indeed, pursuant to South Dakota law, an implied-in-fact contract cannot be found when the parties have an express contract dealing with the same subject matter. *Burch v. Bricker*, 724 N.W.2d 604, 609-10 (S.D. 2006) (citing *Mooney's, Inc. v. South Dakota Dept. of Transp.*, 482 N.W.2d 43, 47 (S.D. 1992)). Here, Plaintiffs have attached cardholder agreements to their Amended Complaint, which they admit are express contracts governing their relationship with Citibank. (Docket No. 1, Exhibits 5-7). Given Plaintiffs' recognition that express contracts between the parties exist which govern the subject matter of the instant dispute, their breach of implied contract claim is precluded, and Count I (breach of implied contract) of their Amended Complaint is dismissed with prejudice.

### Plaintiffs' Remaining Claims

This Court recently ruled on Motions to Dismiss involving the instant Plaintiffs and two other credit card companies, Discover Financial Services and Bank of America. *Grimm v. Discover*, Civil Action No. 08-747, 2008 U.S. Dist. LEXIS 89709 (Nov. 4, 2008). There, Plaintiffs brought eight claims, arising out of the same fraudulent activity, which are identical to those raised in the instant case.[11] *Id.* at *1. The allegations contained in the amended complaints at issue in *Discover*,

---

[11]

The only appreciable difference between Plaintiffs' claims in the instant case and those in *Discover* is the amount in controversy in each case. While the amount in controversy in the instant dispute is $250, the amounts in controversy in *Discover* were $2,500 and $56,300, respectively.

14

as well as the arguments raised by Discover Financial Services and Bank of America in support of their motions to dismiss, are nearly identical to those in the instant case.

In *Discover*, the Court dismissed Plaintiffs' tort claims with prejudice pursuant to both the gist of the action doctrine[12] and the economic loss doctrine.[13] *Id.* at *10-12. Next, the Court held that Plaintiffs' breach of fiduciary duty claim failed as a matter of law, as Pennsylvania law does not recognize a fiduciary relationship between a lender and a borrower, and thus dismissed Plaintiffs' breach of fiduciary duty claim with prejudice. *Id.* at *13. With respect to Plaintiffs' UTP/CPL claim, the Court found that Plaintiffs failed to allege the requisite elements of a UTP/CPL claim and, therefore, dismissed the claim. *Id.* at *15. However, the Court's dismissal was without prejudice, granting Plaintiffs leave to amend their claim.[14] *Id.* Finally, the Court found that Plaintiffs' claim brought under TILA failed because the section of TILA upon which Plaintiffs relied, 15 U.S.C. §

---

*Discover*, 2008 U.S. Dist. LEXIS 89709 at *5-7.

[12]

Pennsylvania's gist of the action doctrine "bars claims for allegedly tortious conduct where the gist of the conduct sounds in contract rather than tort." *Hospicomm v. Fleet Bank, N.A.*, 338 F.Supp.2d 578, 582 (E.D. Pa. 2004); *see also Tier 1 Innovation, LLC v. Expert Tech. Group, LP*, Civil Action No. 06-cv–4622, 2007 WL 1377664, at *2 (E.D. Pa. May 8, 2007) (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n. 3 (3d Cir. 2002)) (the gist of the action doctrine prevents plaintiffs from recovering on a separate tort claim which simply restates a claim for breach of contract).

[13]

Under Pennsylvania law, the economic loss doctrine states that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Adams v. Copper Beach Townhome Cmtys., L.P.* 816 A.2d 301, 305 (Pa. Super. 2003).

[14]

During the oral argument heard by the Court, Plaintiffs' counsel requested leave to amend any UTP/CPL claims currently pending before this Court should the Court find that said claims do not meet the required pleading standard. (*Arg't Trans.* at 24: 4-6).

1643, only applies to actions in which credit card issuers seek to enforce liability for the use of a credit card. *Id.* at *15. Accordingly, Plaintiffs' TILA claims were dismissed with prejudice. *Id.*

As the factual allegations and legal arguments raised in *Discover* are markedly similar to those in the instant case, the Court adopts its decision in *Discover* as the law of the case with respect to Counts II (negligence); III (fraudulent misrepresentation), IV (negligent misrepresentation), V (breach of fiduciary duty), VI (violations of UTP/CPL), VII (violation of TILA/CCPA) and VIII (negligence *per se*).

## VII.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant Citibank's Motion to Dismiss Plaintiffs' Amended Complaint [3] with prejudice, with respect to Counts I (breach of implied contract), II (negligence), III (fraudulent misrepresentation), IV (negligent misrepresentation), V (breach of fiduciary duty), VII (violation of TILA/CCPA) and VIII (negligence *per se*).  In addition, the Court **GRANTS** Defendant Citibank's Motion to Dismiss Plaintiffs' Amended Complaint [3] without prejudice, as to Count VI (violation of UTP/CPL) of Plaintiffs' Amended Complaint, granting Plaintiffs leave to amend Count VI in accordance with this Opinion.  An appropriate order to follow.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: November 14, 2008.
cc/ecf: All counsel of record